OFFICE *of the* ATTORNEY GENERAL
GREG ABBOTT

United States Courts
Southern District of Texas
FILED

JAN 2 4 2005

Michael N. Milby, Clerk of Court

January 20, 2005

Clerk, United States District Court
Southern District of Texas
Houston Division
515 Rusk, Room 5300
Houston, Texas  77002

Re:   *Robert Alan Fratta v. Doug Dretke, Dir., TDCJ-CID*
      **Civil Action No. 4:04mc00315**

Dear Clerk,

Enclosed please find copies of the petitioner's state court records for the above referenced case, which consist of eight volumes of direct appeal records and one volume of state writ records (all contained in two boxes).  Please indicate the date of filing on a copy of the enclosed letter and return in the postage-paid envelope provided for your convenience.

Sincerely,

TINA  J. DETTMER
Assistant Attorney General
Postconviction Litigation Division
Austin, Texas 78711
(512) 936-1400

TJD:em
Enclosures

cc:   Philip Harlan Hilder
      Hilder & Associates
      819 LOVETT BLVD
      HOUSTON TX 77006-3905

POST OFFICE BOX 12548, AUSTIN, TEXAS 78711-2548  TEL: (512)463-2100  WEB: WWW.OAG.STATE.TX.US
*An Equal Employment Opportunity Employer · Printed on Recycled Paper*

Vol. 1 of 8

No. _____

CCRA No. **724437**

Robert Alan Fratta, *Appellant*

Capital Murder
Offense

Death
Punishment

Harris
County,

APPELLANT's _____ MOTION FOR
REHEARING IS _Overruled_
6-30 _____ 19 99
PC
JUSTICE

Trial Court 230TH
Trial Court No. 712409
Trial Judge _Robert Burdette_
Disposition _AFFIRMED Conviction_
Date 2-17-99 | 6-30-99
Justice _L.M./DPC._ | _S./DA/PV/DNP_
Panel _____ Quarter _____ En Banc _____
2C (concurs/R=>) _____
SIF2+4+7 (Balos, *(=>))
St. B. 10-21-97
Ap. B 4-25-97
Supp. Tr. _____
Supp. B. 10-16-98 $ -11-1-98
Pro Se. _____
On Pdr. _____
Pdr Filed. _____
Response. _____
Brief. _____
S. Brief. _____

_Robert Alan_ _____ MOTION FOR
REHEARING IS _Overruled_.
6-30-99 _____ 19
$ _____ R.B.
JUDGE

16 SPP88517

July 19, 1999

Michael B. Charlton
3200 S.W. Freeway
Suite 1120
Houston, TX  77027

John E. Ackerman
4515 Yoakum
Houston, TX  77006

Mandy Welch
Burr and Welch
1630 Castle Court Suite A
Houston, TX  77006

Jake Perret
6763 Highway 6 South
Suite 1100-197
Houston, TX  77083


RE: Case No. 72,437
    230TH DISTRICT COURT - 712409

Style: FRATTA, ROBERT ALAN

Dear Counsel:

On this day, the Appellant's Motion for Extension of Time
to file the Appellant's Motion for Rehearing is DENIED.


Sincerely yours

Troy C. Bennett, Jr., Clerk

By: _Veronica Lee_
Deputy


cc: Charles Bacarisse
    Judge Presiding
    John B. Holmes

FILED IN
COURT OF CRIMINAL APPEALS

**CAUSE NO. 72437**

JUL 1 5 1999

Troy C. Bennett, Jr., Clerk

| ROBERT ALAN FRATTA | X | IN THE COURT OF CRIMINAL |
| | X | |
| V | X | APPEALS IN AND FOR |
| | X | |
| THE STATE OF TEXAS | X | THE STATE OF TEXAS |

7/19/99
Denied
Per Curiam

**MOTION FOR EXTENSION OF TIME**

**TO FILE MOTION FOR REHEARING**

Comes now the Appellant, Robert Alan Fratta, and files this Motion to Extend the Time

for Filing the Motion for Rehearing and, in support thereof, would show the Court as follows:

I.

Appellant was convicted of the offense of capital murder in the 230th District Court, Judge

Bob Burdette presiding, and sentenced to death. His conviction was affirmed by this Court on

February 17, 1999. A Motion for Rehearing was filed and the Court issued a new opinion on

June 30, 1999. A Motion for Rehearing would thus be due to be filed by today, July 15, 1999.

II.

As good cause for granting this extension, Counsel would show the Court that he was in

trial in Galveston County, in a capital murder case where the State did not seek the death penalty,

styled State of Texas v. Mark Dixon. Trial was held from June 28, 1999 to July 7, 1999 in the

212th District Court, Judge Susan Criss presiding. Counsel has been trying to catch up on

paperwork since that time, filing a Motion for Stay of Execution in a case styled Reginald Reeves

v. Gary Johnson, in the Eastern District of Texas, Beaumont Division and a Rule 41 Motion to

Dismiss and a Response to a Summary Judgment Motion in a case styled Gerald Casey v. Gary

Johnson filed in the Southern District of Texas, Houston Division. Counsel requests an extension

of only one week to file the Motion for Rehearing.

Respectfully submitted,

*Michael B. Charlton*
*by [signature] WITH EXpress permission*

Michael B. Charlton
3200 Southwest Freeway, Suite 1120
Houston, Texas 77027
(713) 572 2333
(713) 572 2483 FAX
State Bar of Texas #04144800

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing motion or brief was served on the Harris

County District Attorney's Office, Appellate Division, 201 Fannin, Houston, Texas 77002 by the

appropriate means.

Respectfully,

*[signature] Charlton*
*by [signature]*
*with express permission*

Michael B. Charlton

March 22, 1999

Michael B. Charlton
3200 S.W. Freeway
Suite 1120
Houston, TX   77027

John E. Ackerman
4515 Yoakum
Houston, TX   77006

Mandy Welch
Texas Defender Service
1630 Castle Court Suite A
Houston, TX   77006

Jake Perret
6763 Highway 6 South
Suite 1100-197
Houston, TX   77083

RE: Case No. 72,437
    230TH DISTRICT COURT - 712409

Style: FRATTA, ROBERT ALAN

Dear Counsel:

      On this day, this Court has denied the State's motion to publish.

Sincerely,

Troy C. Bennett, Jr.
Clerk

cc: Charles Bacarisse
      Judge Presiding
      John B. Holmes

*Denied*

No. 72,437
In the
**Court of Criminal Appeals**
For the
Austin, Texas

**FILED IN**
COURT OF CRIMINAL APPEALS

MAR 8  1999

Troy C. Bennett, Jr., Clerk

No. 712,409
In the 230th District Court
Of Harris County, Texas

———————◆———————

**ROBERT ALAN FRATTA**
v.
**THE STATE OF TEXAS**
*Appellee*

———————◆———————

**State's Motion to Publish**

———————◆———————

To the Honorable Court of Criminal Appeals

Now comes the State of Texas, by and through the undersigned
assistant district attorney who, pursuant to the provisions of Tex. R. App. Proc.
47.3, files this motion to publish this Court's opinion in **Fratta v. State**, Cause
No. 72437, for the following reasons:

1. Appellant was convicted of capital murder in April of 1996.

2. Appellant's brief included 66 points of error. Of these, several raised
important issues of criminal law which had not yet been settled by this case.

3.   On February 17th, 1999, this Court issued an unpublished opinion, authored by Judge Meyers, which addressed all points of error and affirmed the case.   Judge Womak issued a concurring opinion in which Presiding Judge McCormick and Judges Keller, Holland and Johnson joined.

4.   The State believes that this case should be published because it addresses important issues of law which prior to this opinion had not been resolved.   In particular, this Court's opinion and the concurring opinion in this case both address the issue of the use of co-defendants' statements against the defendant. This area of the law has been in flux, with several cases from this court indicating a disagreement as to the extent such statements could be used.   *See* **Miles v. State**, 918 S.W.2d 511 (Tex. Crim. App. 1996); **Davis v. State**, 872 S.W.2d 743, 748 n.11 (Tex. Crim. App. 1994).   It has also been the subject of recent Supreme Court opinions, prompting both the State and the defense to file lengthy supplemental briefs.   *See* **Gray v. Maryland**, 523 U.S.___ (1998).   The well reasoned opinions from the Court and the concurrence on this issue would be invaluable to trial courts and prosecutors trying to determine the admissibility of similar statements in other cases.   *See* TEX. R. APP. P. 47.4(a), (b).

5.   In addition, several other points of error apply caselaw and rules of evidence to novel fact situations which are likely to recur in future cases, such as the use of extraneous offenses, death row studies, and complicated hearsay

questions.  Once again, the Court's well reasoned opinion would provide guidance in these areas.

## PRAYER FOR RELIEF

WHEREFORE, the State prays that this Court will publish its decision in the above entitled and numbered cause.

Respectfully submitted,

**Kimberly Aperauch Stelter**
Assistant District Attorney
Harris County, Texas
Houston, Texas  77002-1901
(713) 755-5826
TBC No. 19141400

March  8, 1999

Michael B. Charlton
3200 S.W. Freeway
Suite 1120
Houston, TX  77027

Mandy Welch
Texas Defender Service
1630 Castle Court Suite A
Houston, TX  77006

John E. Ackerman
4515 Yoakum
Houston, TX  77006

Jake Perret
6763 Highway 6 South
Suite 1100-197
Houston, TX  77083

RE: Case No. 72,437
    230TH DISTRICT COURT - 712409

Style: FRATTA, ROBERT ALAN

Dear Counsel:

     ORDER: On this day the appellant's motion for extension of
time to file the appellant's motion for rehearing has been
granted. The time for filing the appellant's motion for rehearing
has been extended to 3-18-99.
SPECIAL NOTE: NO FURTHER EXTENSIONS WILL BE GRANTED.

                         Sincerely,

                         Troy C. Bennett, Jr.
                         Clerk


cc: Charles Bacarisse
      Judge Presiding
    John B. Holmes

CAUSE NO. 72437

| ROBERT ALAN FRATTA | X | IN THE COURT OF CRIMINAL |
| | X | |
| V | X | APPEALS IN AND FOR |
| | X | |
| THE STATE OF TEXAS | X | THE STATE OF TEXAS |

**FILED IN**
COURT OF CRIMINAL APPEALS

MAR 8 1999

Troy C. Bennett, Jr., Clerk

**MOTION FOR EXTENSION OF TIME**

**WITHIN WHICH TO FILE THE MOTION FOR REHEARING**

Comes now the Appellant, Robert Alan Fratta, and files this Motion to Extend the Time

for Filing the Motion for Rehearing and, in support thereof, would show the Court as follows:

I.

Appellant was convicted of the offense of capital murder in the 230th District Court,

Judge Bob Burdette presiding, and sentenced to death. His conviction was affirmed by this Court

on February 17, 1999. The Motion for Rehearing is due to be filed by March 4, 1999.

II.

As good cause for granting this Extension counsel would show the Court that he has been

engaged in the following activities:

Counsel must file both a Rule 59 and a Rule 60 Motions in federal court in a case styled

Spencer Corey Goodman v. Johnson by March 4, 1999. Counsel must also file an

amended application for writ of habeas corpus in a case styled Gerald Casey v. Johnson

in the District Court for the Southern District of Texas Houston Division by March 8,

1999. Finally, counsel will be out of the state from March 11, 1999 to March 16, 1999.

Counsel requests an extension of the filing deadline from March 4, 1999 to March 25,

1999.

Respectfully submitted,


Michael B. Charlton
3200 Southwest Freeway, Suite 1120
Houston, Texas 77027
(713) 572 2333
(713) 572 2483 FAX
State Bar of Texas #04144800


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing motion or brief was served on the Harris

County District Attorney's Office, Appellate Division, 201 Fannin, Houston, Texas 77002 by the

appropriate means.


Respectfully,


Michael B. Charlton

CAUSE NO. 72437

| | | |
|---|---|---|
| **ROBERT ALAN FRATTA** | X | **IN THE COURT OF CRIMINAL** |
| | X | |
| **V** | X | **APPEALS IN AND FOR** |
| | X | |
| **THE STATE OF TEXAS** | X | **THE STATE OF TEXAS** |

**AFFIDAVIT**

On this the 3rd day of March, 1999 came on before me Michael B. Charlton who on his

oath deposed and said as follows:

My name is Michael B. Charlton and I am counsel for the appellant, Robert Alan Fratta. I

have read the allegations of the attached Motion and they are within my personal

knowledge true and correct.

Michael B. Charlton

Subscribed and Sworn to on this the 3rd day of March 1999.



Notary Public for the State of Texas.

INNOCENSIA OQUINN
NOTARY PUBLIC
State of Texas
Comm. Exp. 11-30-2002



TROY C. BENNETT, JR.
CLERK

RICHARD WETZEL
EXECUTIVE ADMINISTRATOR

**Court of Criminal Appeals**

**State of Texas**
**Box 12308**
**Capitol Station**
**Austin 78711**

MICHAEL J. McCORMICK
PRESIDING JUDGE

CHARLES F. (CHARLIE) BAIRD
MORRIS L. OVERSTREET
LAWRENCE E. MEYERS
STEPHEN W. MANSFIELD
SHARON KELLER
TOM PRICE
SUE HOLLAND
PAUL WOMACK
JUDGES

October 27, 1997

Mr. Michael B. Charlton
Attorney at Law
4515 Yoakum
Houston, Tx   77006

Mr. John B. Holmes
District Attorney
201 Fannin
Houston, Tx   77002

No. 72,437
Trial Court No. 712409

STYLED: ROBERT ALAN FRATTA   VS.   THE STATE OF TEXAS

Dear Counselors:

The above case is set for submission to the Court on **WEDNESDAY, December 10, 1997 at 9:00 A.M.**

**ORAL ARGUMENT WILL BE PERMITTED**, however, **all parties shall notify** the Clerk of this Court, **in writing within 20 days** after the date of this notice, whether or not oral argument is desired.   Failure to request oral argument constitutes waiver thereof.

**If oral argument is requested, please indicate the grounds of error to be argued**.

**PREVIOUSLY REQUESTED ORAL ARGUMENT ON BRIEFS OR PLEADINGS IS NOT SUFFICIENT.**

-2-

Twenty minutes oral argument will be permitted.  Bench memorandums have been prepared for the judges in all argued cases setting forth grounds of error, authorities relied upon, a summary of the facts, etc.  These are read and studied by the Judges before argument. Oral argument is not the Court's first knowledge of the case. Prepare your argument with this in mind.  Brevity will be appreciated by the Court.

Sincerely,

TROY C. BENNETT, JR.
Clerk

By _Belva Myler_____ Deputy

cc:   Judge Presiding
      Charles Bacarisse
      Jake Perret
      John Ackerman



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO.72,437

ROBERT ALAN FRATTA, Appellant

v.

THE STATE OF TEXAS

## ON DIRECT APPEAL
## FROM HARRIS COUNTY

      *MEYERS, J., delivered the unanimous opinion of the Court with respect to Appellant's thirteenth through sixty-sixth points of error, and an opinion with respect to Appellant's first through twelfth points of error.  WOMACK, J., delivered the opinion of the Court with respect to Appellant's first through twelfth points of error, in which McCORMICK, P.J., and KELLER, HOLLAND, and JOHNSON, J.J., joined.*

## <u>OPINION</u>

Our previous opinions in this case are withdrawn.

Appellant was convicted in April 1996 of murder for remuneration committed in November 1994.  PENAL CODE ANN. §19.03(a)(3). Pursuant to the jury's answers to the statutory punishment issues set forth in Texas Code of Criminal Procedure articles 37.071, sections 2(b)

and 2(e), the trial court sentenced Appellant to death.[1]  Article 37.071 § 2(g).  Direct appeal is

automatic.  Article 37.071 § 2(h).  We affirm the conviction and sentence.

Appellant raises sixty-six points of error.  While he does not challenge the sufficiency of

the evidence to support his conviction, he challenges the sufficiency of the evidence to support

the jury's answers to the special issues.  We address the sufficiency issues first followed by

Appellant's points of error pertaining to the guilt/innocence phase of trial and Appellant's points

of error pertaining to the punishment phase of trial."

## I. LEGAL SUFFICIENCY OF THE EVIDENCE OF FUTURE DANGEROUSNESS

In his thirty-fifth point of error, Appellant submits there is insufficient evidence to

support the jury's finding that he would be a continuing danger to society.  Article 37.071 §

2(b)(1).  In reviewing this point, we must look at the evidence in the light most favorable to the

verdict to determine whether any rational trier of fact could have believed beyond a reasonable

doubt that Appellant would probably commit criminal acts of violence that would constitute a

continuing threat to society.  Jackson v. Virginia, 443 U.S. 307 (1979); Allridge v. State, 850

S.W.2d 471 (Tex. Crim. App. 1991), cert. denied, 114 S. Ct. 101 (1993).  The facts of the crime

alone can be sufficient to support the affirmative finding to the special issue.  Allridge, supra.

Indeed, the facts of the crime alone may provide greater probative evidence of a defendant's

probability for committing future acts of violence than any other factor relevant to the special

---

[1]Unless otherwise indicated, all references to articles are to those in the Texas Code of
Criminal Procedure in effect at the time of the offense.

Fratta - 3

issue.[2] Id.

In the light most favorable to the jury's verdict, the facts of the instant case show Appellant planned to kill his wife and set about carrying out his plans.  Appellant made a list of his wife's daily activities to help him determine when would be the best time to kill her. Appellant talked to several people about his desire to kill his wife and attempted to solicit their help.  He also offered to kill a friend's ex-wife if the friend would return the favor by killing Appellant's wife.  Ultimately, Appellant succeeded in getting two friends to carry out his plans.

Appellant appeared to have no regard for the effect the death would have on his children; he brought them to the scene of the murder shortly after its occurrence, presumably expecting

---

[2]At trial, the jury is permitted to look at several factors in its review of future dangerousness including, but not limited to:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

3. the forethought and deliberateness exhibited by the crime's execution;

4. the existence of a prior criminal record, and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the offense;

6. whether the defendant was acting under duress or the domination of another at the time of the offense;

7. psychiatric evidence; and

8. character evidence.

Barnes v. State, 876 S.W.2d 316, 322 (Tex. Crim. App.), cert. denied, 115 S. Ct. 174 (1994); Keeton v. State, 724 S.W.2d 58, 61 (Tex. Crim. App. 1987) ("Keeton I").  These factors are also helpful in this Court's evaluation of this question.

them to "discover" their mother's body.  Appellant exhibited a cavalier attitude about the death of his wife, both at the scene and during later questioning by the police.  This attitude could also be inferred from his concern about getting something to eat immediately after being told of the death, laughing and joking with the press, and going to a topless bar on the night of his wife's funeral.

The State elicited testimony from Appellant's own expert that Appellant was narcissistic and exhibited signs of antisocial behavior and paranoia.  The State also put on evidence that Appellant's intelligence and manipulative behavior could be used to get less intelligent individuals to do his bidding in jail.

Given this evidence, we conclude a rational juror could have found that Appellant would probably be a continuing threat to society.  Accordingly, we hold the evidence legally sufficient to support the jury's affirmative answer to the future dangerousness issue.  <u>Jackson</u> and <u>Allridge</u>, <u>supra</u>.  **Point of error thirty-five is overruled.**


## II. FACTUAL SUFFICIENCY OF THE EVIDENCE OF FUTURE DANGEROUSNESS

Appellant argues in his sixty-sixth point of error that the evidence is factually insufficient to sustain the jury's affirmative answer to the future dangerousness issue.  In <u>McGinn v. State</u>, 961 S.W.2d 161 (Tex. Crim. App. 1998) we refused to extend <u>Clewis v. State</u>, 922 S.W.2d 126 (Tex. Crim. App. 1996) to the punishment issues of a capital case.  Appellant has made no argument to sway us from this holding.  **Point of error sixty-six is overruled.**

Fratta - 5

### III. SUFFICIENCY OF MITIGATION EVIDENCE

In his thirty-fourth and sixty-fifth points of error, Appellant asserts the evidence is both legally and factually insufficient to sustain the jury's negative answer to the mitigation issue. See Art. 37.071 § 2(e). We do not review sufficiency of the evidence as regards the mitigation special issue. McFarland v. State, 928 S.W.2d 482 (Tex. Crim. App. 1996), cert. denied, 117 S. Ct. 966 (1997). This is true for a legal or factual sufficiency review. The weighing of mitigating evidence is a subjective determination undertaken by each individual juror, and we decline to review that evidence for sufficiency. Id. at 498. **Points of error thirty-four and sixty-five are overruled.**

### IV. STATEMENTS OF CODEFENDANTS

In his first twelve points of error, Appellant asserts that statements made to the police by Appellant's co-defendants Howard Guidry and Joseph Prystash were improperly admitted at the guilt/innocence phase of trial. Specifically, Appellant complains that the statements, testified to by the officer who took them, were hearsay and violated his rights to confront and cross-examine his accusers under the Sixth Amendment; his rights under the due process clause of the Fourteenth Amendment; and his rights under Article I, sections 10, 13, and 19 of the Texas Constitution.

The State called Sergeant Danny Billingsley to the stand to testify to his role in the investigation and interrogation of co-defendants Guidry and Prystash.[3] When the State asked

---

[3]At the time of his discussion with Billingsley, Guidry had been arrested on a robbery
(continued...)

Billingsley to discuss what Guidry told him about his role in the offense. Appellant objected that the statements were inadmissible hearsay and violated his rights to cross-examination under the federal and Texas Constitutions.[4]  The State clarified that Appellant would not be named nor would he be otherwise alluded to during the testimony.  The trial court overruled Appellant's objections and Billingsley proceeded to tell the jury what Guidry had related to him about the events on the night of the victim's death.

Guidry related to Billingsley that on the specified day around 5:30 p.m., he (Guidry) met up with Prystash who drove him by the victim's residence and then proceeded to the nearby Davis Food City.[5]  While in the parking lot of the store, Prystash used a mobile phone to call one of the pay phones on the premises to make sure it would receive incoming calls.[6]  After checking the pay phone, the two proceeded to the victim's residence where Guidry entered the backyard and hid in a small playhouse located there.[7]  At the time of hiding, Guidry was in possession of a revolver and the mobile phone Prystash had previously used.

---

[3](...continued)
charge and was found to be in possession of a revolver, later determined to be the one used in the instant case.  Guidry had not yet been placed under arrest for his participation in the instant case.

[4]Appellant made no explicit objections based upon federal due process or due course of law under the Texas Constitution.  However, because Appellant combines most of his arguments on these points and because due process arguably encompasses the rights of cross-examination and confrontation, we will include these points in our general discussion of these issues.  See In re Oliver, 68 S. Ct. 499 (1948); Holland v. State, 802 S.W.2d 696, 699-700 (Tex. Crim. App. 1991).

[5]The evidence showed Prystash was driving a gray, two-door Nissan.

[6]The mobile phone was later shown to belong to Prystash's girlfriend, Mary Gipp.

[7]Guidry told Billingsley he was wearing a black t-shirt, black pants, and black tennis-type shoes.

After about twenty minutes, Guidry called the pay phone at the  Food City and told Prystash that the victim had not come home yet.  Prystash told Guidry to wait.  Another twenty minutes went by after which Guidry again called Prystash at the Food City pay phone.  Finally, a short while later, a car arrived and pulled into the garage.  Guidry exited the playhouse and went to stand by the garage.  Finding the side door to the garage locked, Guidry stood quietly until the woman opened the door.  Guidry then stepped inside and shot her once in the head.  Upon turning to leave, Guidry noticed the woman was still moving and so he shot her in the head a second time.  Guidry then exited the garage and returned to the playhouse to call Prystash.  After the call, Guidry moved towards the front of the house and hid behind a bush to wait for Prystash who arrived twenty to thirty seconds later.  Guidry related to Billingsley that he expected to receive $1,000.00 for the crime.

Finally, Guidry told Billingsley that he initially gave the revolver he used to commit the murder to Prystash.  However, Prystash later returned the weapon to him with instructions to dispose of it by cutting it up with a torch and throwing it in a river.  Guidry did not comply with those instructions.

The State then asked Billingsley questions about the conversation he had had with Prystash.  Billingsley testified that Prystash related the same series of events told to him by Guidry.

Certain statements might be admissible as evidence notwithstanding the prohibition against hearsay.  See McFarland v. State, 845 S.W.2d 824, 835 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 2937 (1993); TEX. R. CRIM. EVID. 802 and 803(24).  Rule of Criminal Evidence 803(24) states, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> **(24) Statement against interest**.   A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true.   A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

See McFarland, 845 S.W.2d at 835.

Billingsley testified that both Guidry and Prystash confessed to him their participation in the instant crime.  Guidry's explanation leading up to and including the intentional and premeditated shooting of the victim renders him directly liable for the death of the victim and Prystash's revelation as to his part in planning and carrying out the murder at a minimum makes him liable as a party.  Hence, both Guidry and Prystash inculpated themselves via their statements, at least to the offense of murder, and therefore, the statements qualified as statements against interest under Tex. R. Crim. Evid. 803(24).  In order to be admissible under this rule, however, there must be corroborating circumstances clearly indicating the trustworthiness of the statement.

As previously noted, at the time of Guidry's arrest, he was in possession of the gun that later proved to be the murder weapon.  This fact, plus records showing phone calls made; autopsy reports; ballistics reports; testimony by the victim's neighbors who heard gunshots on the night of the murder, saw the victim fall, and saw a man dressed in black standing on the side of the victim's house; Appellant's actions near the time of the murder; and observations made by Prystash's girlfriend, Mary Gipp, provide the necessary corroboration required by Rule 803(24).

Fratta - 9

Notwithstanding the statements' admissibility under Rule 803(24), admission might still be prohibited by the Confrontation Clause and Appellant's right to cross-examine his accusers since the co-conspirators were not available for questioning at trial.  Miles v. State, 918 S.W.2d 511 (Tex. Crim. App. 1996); see also Davis v. State, 872 S.W.2d 743, 748 n.11 (Tex. Crim. App. 1994).  However, in the instant case, Billingsley testified that Guidry told him about events in which he (Guidry) and Prystash had participated and, conversely, Prystash told him about events in which he (Prystash) and Guidry had participated.  No mention was made of Appellant or any involvement Appellant may have had in the planning or carrying out of the murder.  In other words, nothing in either Guidry's or Prystash's statements implicated Appellant.

The  right of an accused to confront the witnesses against him, secured by the Sixth Amendment, includes the right of cross-examination.  Pointer v. Texas, 380 U.S. 400, 404, 406-7 (1965).  In fact, giving a defendant charged with a crime the opportunity to cross-examine the witnesses against him is one of the major purposes underlying the constitutional confrontation rule.  See Maryland v. Craig, 497 U.S. 836 (1990).  The United States Supreme Court has addressed the admissibility of codefendant statements in light of the Confrontation Clause.

In Bruton v. United States, 391 U.S. 123 (1968), the Court held that admission of the facially incriminating confessions of a nontestifying codefendant deprives the defendant of his Confrontation Clause rights, even when the jury is instructed to consider the confession only against the nontestifying codefendant.  Recently, the Court also held that the confession of a nontestifying codefendant is equally inadmissible when that confession is redacted to replace the defendant's name with "an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol."  Gray v. Maryland, 523 U.S. ___, slip op. at 5-6 (1998).  The

present case differs from Bruton and Gray because the statements of Prystash and Guidry were

redacted to remove not only Appellant's name, but also any reference to his existence.  The

admitted statements are analogous to the confessions introduced in Richardson v. Marsh, 481

U.S. 200 (1987).  Like the confession in Richardson, the statements admitted in the present case

were "not incriminating on [their] face[s], and became so only when linked with evidence

introduced later at trial."  Id. at 208.  Richardson ultimately concluded that admission of a

confession redacted in this manner does not violate a defendant's confrontation clause rights.  Id.

at 211.  As such, we conclude that admission of Guidry's and Prystash's redacted statements did

not violate Appellant's Confrontation Clause rights.  See Guzman v. State, 959 S.W.2d 631 (Tex.

Crim. App. 1998) ("When we decide cases involving the United States constitution, we are

bound by United States Supreme Court case law interpreting it.")  **Points of error one through**

**twelve are overruled.**

### V.  EVIDENCE CONCERNING DIVORCE PROCEEDINGS

#### A.  Grounds for Divorce

Appellant complains in his thirteenth point of error that the trial court erred in admitting,

during guilt/innocence, allegations raised in the divorce proceedings that the divorce was sought

on grounds of Appellant's cruelty towards the victim.  Appellant claims the trial court never

ruled on his objection to this testimony and he was harmed by its prejudicial nature.

The record reveals the following colloquy between the State and the one of the victim's

divorce attorneys:

> [THE STATE:]  When you originally filed this petition for divorce, on what
> grounds did you file the divorce?

[THE WITNESS:]  Well, the divorce petition listed the normal--

[DEFENSE COUNSEL:]  We object to any reference to allegations of a divorce petition.  Divorce allegations are never admissible in a murder case.

THE COURT:  Rephrase your question, please.

[DEFENSE COUNSEL:]  Is our objection still sustained?

THE COURT:  The answer is not going to come from that question.

[DEFENSE COUNSEL:]  I'm sorry.  I have to ask you for a ruling.

THE COURT:  Yes.  Yes.  Rephrase the question.

[THE STATE:]  Mr. Beeler, when you originally filed the divorce petition, as your first ground did you file it as a--

[DEFENSE COUNSEL:]  Objection to any allegation or any reference to a divorce petition.

THE COURT:  That's overruled.

[THE STATE:]  As a no fault divorce?

[THE WITNESS:]  No, it wasn't.  It was a fault divorce.

[THE STATE:]  Okay.  Well, up until the day of the depositions, had you ever discussed with the lawyer, had or had it ever been brought up, the reason for the fault divorce?

[THE WITNESS:]  The pleading contained the ruling of cruelty.

[DEFENSE COUNSEL:]  Judge, we are--

THE COURT:  the answer is either yes or no.

[DEFENSE COUNSEL:]  We respectfully ask the jury be--

THE COURT:  Don't consider that last answer for any purpose.

[DEFENSE COUNSEL:]  We respectfully move for a mistrial.

THE COURT: Denied.

While the judge did not explicitly rule on Appellant's initial objection, his instruction to rephrase the question, and his later instruction to the jury to disregard the answer amounted to an implicit sustaining of the objection. Furthermore, an instruction to disregard is generally sufficient to cure any error that might occur from such a remark. See Norris v. State, 902 S.W.2d 428, 443 (Tex. Crim. App. 1995). The same attorney had previously provided similar information, including testimony that the victim wanted a divorce because Appellant wanted an "open marriage," which included the victim having sex with Appellant and another woman at the same time, and Appellant having sex with other women. Based on past case law, it is likely this information would have been sufficient to support a fault-based divorce on grounds of cruelty. See, e.g., Crocker v. Crocker, 474 S.W.2d 630 (Tex. App.--Houston [14th Dist.] 1971) (cruelty found where husband repeatedly asked wife to sign over property awarded in prior divorce between the parties, left town without telling wife where he would be or how to locate him, and had questionable relationship with prior girlfriend); Hunt v. Hunt, 456 S.W.2d 243 (Tex. App.--Corpus Christi 1970) (cruelty found where husband repeatedly accused wife of infidelity). Furthermore, the witness testified that this was "the last straw" for the victim. Appellant did not object to this testimony. Any error that arose from the witness' remark was cured by the instruction. **Point of error thirteen is overruled.**

### B. Victim's Deposition

In points of error fourteen through seventeen Appellant claims that the trial court erred in allowing into evidence portions of a deposition of the victim, taken during the divorce

proceedings.[8] During this deposition, the victim gave as the reason for her wanting a divorce several bizarre sexual demands made upon her by Appellant. Appellant was present at the deposition and the allegations were made in front of him. It was the State's theory at trial that Appellant decided to kill his wife shortly after she went "public" with these embarrassing allegations. Appellant made several objections to the testimony including: (1) the evidence was inadmissible hearsay and did not qualify as prior recorded testimony in that it was not made in the same or similar case; (2) no notice was given under Texas Rule of Criminal Evidence 404(b); (3) the admission of the evidence violates the defendant's right to cross-examination; (4) the testimony is irrelevant; and (5) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX. R. CRIM. EVID. 801(d). The State's theory was that part of Appellant's motive was due to the victim's allegations of deviant sexual behavior. Whether or not the allegations were true is of no moment; rather, it was the fact that the allegations were made. Because they were not offered to prove the truth of what was stated, the statements do not constitute hearsay.

Furthermore, it is the offer of motive that makes the statements (or, rather, the fact that statements of this nature were made) relevant. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable than it would be

_____

[8]It should first be noted that it was not the deposition itself which the State sought to introduce. See Article 39.01 et seq. (governing the use of depositions in criminal cases). Rather, the State was presenting testimony through the victim's divorce attorney concerning statements the victim had made during the taking of her deposition in the divorce proceeding.

without the evidence. TEX. R. CRIM. EVID. 401. Evidence offered to show motive for the

commission of an offense is always relevant as a circumstance to prove the commission of the

offense. Crane v. State, 786 S.W.2d 338, 350 (Tex. Crim. App. 1990).

Also, the admission of the statements did not violate Appellant's right to confront and

cross-examine witnesses. Historically, the purpose of the confrontation clause was to exclude

accusation by written deposition. Carroll v. State, 916 S.W.2d 494, 496 (Tex. Crim. App. 1996)

(citing Dowdell v. United States, 221 U.S. 325, 330 (1911)). The right to confront one's accuser

necessarily includes the right to cross-examine. Carroll, 916 S.W.2d at 497.

As we noted in Carroll, cross-examination serves three general purposes: (1) to identify

the witness with his community so that testimony may be sought concerning the witness'

reputation for veracity in that community; (2) to allow the jury to assess the credibility of the

witness; and (3) to allow facts to be brought out tending to discredit the witness by showing that

his testimony was untrue or biased. 916 S.W.2d at 497. Because the testimony in the instant

case was not offered for its truth, the above-cited purposes do not apply and Appellant's right to

confront and cross-examine witnesses is not implicated.

Additionally, Appellant posits that the testimony should not have been admitted because

its probative value was substantially outweighed by the danger of unfair prejudice. See TEX. R.

CRIM. EVID. 403. Appellant basically asserts here that, even if the testimony can be said to be

relevant, it is not probative because no one ever testified that Appellant's motive for killing his

wife was his embarrassment at the allegations made by his wife. Indeed, several witnesses

testified that Appellant solicited them to kill his wife because of various financial concerns. The

State counters that money concerns were certainly a large part of Appellant's motive for killing

his wife.  However, the victim's airing of Appellant's embarrassing sexual proclivities was also part of this motive.  Even Appellant's trial attorney argued during closing that these allegations made Appellant angry and hurt and humiliated him.  Hence the probative value of the testimony was not substantially outweighed by its prejudicial effect.

Finally, Appellant complains he did not receive proper notice under Rule 404(b).  Rule 404(b) outlines admissibility of evidence of "other crimes, wrongs, or acts," specifically stating that this type of evidence is inadmissible to "prove the character of a person in order to show conformity therewith," though it may be admissible for other purposes if the State provides the required notice.  TEX. R. CRIM. EVID. 404(b).  Prior to trial, Appellant filed a Motion In Limine regarding certain evidence, including "the extraneous solicitations" and the victim's deposition.[9]  The trial record shows that both sides agreed that notice was not at issue,[10] though Appellant

---

[9]The Motion in Limine stated: "The State has provided notice to defense counsel of its intent to introduce evidence of certain extraneous solicitations."

[10]Specifically, the following conversation occurred outside the presence of the jury during the discussion of Appellant's Motion in Limine:

| [THE STATE]: | I do intend to go into some of the things that they mentioned in the Motion in Limine in the opening statement.  Other than that, I have no objection to approaching the bench. |

| [THE COURT]: | Specifically which items? |

| [THE STATE]: | Specifically regarding the extraneous solicitations and the deposition [of the victim] and statements Fratta made in regards to that deposition. |

| [THE COURT]: | And the clerk is not here, so I don't have the benefit of the file.  Notice was provided-- |

| [THE STATE]: | Yes, sir. |

(continued...)

continued to object that the evidence was inadmissible on other grounds.  If notice was not

provided, Appellant waived notice by explicitly agreeing that notice had been provided.

**Appellant's points fourteen through seventeen are overruled.**


### C.  Testimony of Victim's Divorce Attorneys

In his eighteenth and nineteenth points of error, Appellant complains the trial court erred

in failing to grant his motion for mistrial "based on the State's continued effort to introduce

before the jury [the victim's] hearsay statements."  In particular, Appellant complains of the

specific portions of the State's questioning of the victim's two divorce attorneys set out below.

During the direct examination of the victim's divorce attorney, James Beeler, the following

colloquy occurred:

> [THE STATE:]  After that deposition did you have conversations with [the victim]?
>
> [THE WITNESS:]  Yes, I did.
>
> [THE STATE:]  Did you ever have any conversations with [the victim] where she voiced to you that she was afraid of the defendant?
>
> [THE WITNESS:]  On numerous occasions.
>
> [THE STATE:]  What did she tell you, Mr. Beeler?
>
> [DEFENSE COUNSEL:]  Objection, hearsay, Your Honor.
>
> THE COURT:  Sustained.

---

[10](...continued)
[THE COURT]:        --of the extraneous offenses.

[DEFENSE COUNSEL]:        Yes, sir.

[THE STATE:]  Before the deposition, had [the victim] ever told you that she feared for her life?

[DEFENSE COUNSEL:]  Objection.  The question is leading and also brings in hearsay evidence through the nature of her question.

* * *

THE COURT:  The objection is sustained.

[DEFENSE COUNSEL:]  May we ask the jury be instructed to disregard the question.

THE COURT:  Ladies and gentlemen, don't consider the question.

[DEFENSE COUNSEL:]  Respectfully move for a mistrial.

THE COURT:  Denied.

After Beeler moved his practice to Victoria, the victim retained Christine Jontee to represent her in her divorce from Appellant.  During the direct examination of Jontee, the following transpired:

[THE STATE:]  Now, can you describe the marriage that you were witnessing here?

[THE WITNESS:]  When [the victim] hired me, we were getting geared up for a trial.  So I came, kind of came in late in the situation.  She expressed some fear of her husband.

[DEFENSE COUNSEL:]  Objection, hearsay, Your Honor.

THE COURT:  That's sustained.

[DEFENSE COUNSEL:]  Respectfully move that answer be stricken.

THE COURT:  Don't consider the last answer for any purpose.

[DEFENSE COUNSEL:]  Respectfully move for a mistrial.

THE COURT:  That's denied.

In both of the complained-of instances, the trial court immediately sustained Appellant's

objection to the testimony and instructed the jury to disregard the comments.  An instruction to

disregard typically cures any error that might have occurred in such a situation.  E.g. Shannon v.

State, 942 S.W.2d 591 (Tex. Crim. App. 1996).  This general rule also holds true here.  The trial

court promptly responded to Appellant's objections and requests for an instruction.  The

comments were not egregious; in light of the larger body of evidence regarding Appellant's

nature, such short, passing comments were insignificant.  **Points of error eighteen and nineteen**

**are overruled.**


## VI. TESTIMONY OF VICTIM'S FRIENDS

In points twenty through twenty-two, Appellant continues to complain of the State's

efforts to get the victim's "state of mind" into evidence during the guilt/innocence phase of trial.

During the testimony of Rita St. Onge (a "close friend" of the victim), the State asked the witness

what the victim had told her regarding her (the victim's) feelings about her husband.  Appellant's

hearsay objection was sustained.  Another time, the State asked St. Onge to tell the jury the

victim's state of mind based upon a telephone conversation St. Onge had with the victim.

Appellant's objection to this testimony was also sustained.  In both of these instances, Appellant

received all he asked for from the court and nothing improper was presented to the jury.

Finally, the prosecutor asked, "Based on what you saw of [the victim], describe to the

jury, her state of mind at that time close to when she was killed[.]"  Defense counsel again made

a hearsay objection to this testimony, but that objection was overruled and the witness answered

that the victim had been "[e]xtremely scared."  Unlike the two prior instances of hearsay

illustrated above, this question from the prosecutor was asking for the witness' opinion of the

victim's state of mind based upon observations she made concerning the victim. See TEX. R. CRIM. EVID. 701. Because this question did not seek to elicit hearsay, the trial court appropriately allowed it. **Appellant's twentieth point of error is overruled.**

During the questioning of Kitty Waters, another friend of the victim, the prosecutor specifically told the witness not to relate what the victim said to her in a telephone conversation. Rather, the prosecutor asked the witness "to describe her demeanor toward you on the phone and her state of mind on the phone[.]" Appellant objected that this called for hearsay and the trial court overruled the objection. The witness responded that the victim was afraid and was very subdued. Because the question asked for the observations of the witness and not a statement made by the victim, the response to be elicited was not hearsay and the trial court properly overruled the objection. TEX. R. CRIM. EVID. 801(d). **Point of error twenty-one is overruled.**

Also during Waters' testimony, the State asked about a conversation Waters had with the victim during which she noticed the victim acting depressed and terrified. Specifically, the State asked whether this conversation was about Appellant. The judge sustained Appellant's objection to this question and instructed the jury to disregard both the question and the answer that had been given. Appellant's motion for mistrial was overruled. Again, the instruction to disregard was sufficient to cure any error that might have occurred from the improper question. Shannon, supra. **Point twenty-two is overruled.**

## VII. TESTIMONY OF DETECTIVE

Appellant posits in points twenty-three through twenty-five that several statements by Harris County Sheriff's Detective Ronnie Roberts, offered by the State at trial, were inadmissible

hearsay.  The first complaint concerns Roberts' communications with Mary Gipp, codefendant

Prystash's girlfriend.  Roberts told the jury that after talking to Gipp, he had the name of a

suspect to work with and that name was "Howard."  Roberts further testified that, as the result of

a conversation he had with two officers in the robbery section, he retrieved a Charter Arms .38

special pistol from the property room which later turned out to be the murder weapon in the

instant case.[11]  Finally, Roberts testified that, prior to Appellant's arrest, other suspects had been

arrested and had proven to be "cooperative" with police.  Appellant complains of these

statements as inadmissible hearsay.

As previously noted, hearsay is a statement, other than one made by the declarant  while

testifying at trial, which is offered into evidence to prove the truth of the matter asserted.  TEX. R.

CRIM. EVID. 801(d).  An extrajudicial statement offered for the purpose of showing <u>what</u> was

said rather than for the <u>truth</u> of the matter stated therein does not constitute hearsay.  <u>Dinkins v.

State</u>, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995).  Statements admitted not to prove the truth

of the matter stated, but rather to explain how the defendant came to be a suspect are likewise not

hearsay.  <u>Id.</u>; <u>Jones v. State</u>, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992).  The complained-of

statements in these three points of error were offered to show the course of Roberts' investigation

and were not offered to prove the truth of the matter asserted by the out of court declarant.

**Points of error twenty-three through twenty-five are overruled.**

---

[11]    The State proved later in trial that this pistol had been recovered from Howard Guidry
in connection with an unrelated robbery.

Fratta - 21

## VIII.  TESTIMONY OF MARY GIPP

In his next seven points of error, Appellant complains of portions of Gipp's testimony

wherein she made reference to statements Prystash made to her.  While Appellant generally

complains about allowing Gipp to testify about "the contents of her conversations with" Prystash,

we will only address those statements or parts of conversation Appellant specifically sets out in

his brief.  See TEX. R. APP. P. 38.1(h).

### A.  Conversation Prior to the Murder

In a hearing outside the presence of the jury, Appellant complained of certain testimony

the State was about to elicit from Gipp:

> [THE STATE:]        Ms. Gipp, I want to ask you to describe the events
> concerning a converation you had or statement you made to Mike Edens a week
> or two [before the instant offense].
>
> * * *
>
> On that occasion, can you tell us who did you go to the gym with or did you meet
> there?
>
> [WITNESS:]  [Prystash.]
>
> [THE STATE:]        Okay.  Was [appellant] also there?
>
> [WITNESS:]  Yes, I believe so.
>
> [THE STATE:]        Do you know where [Prystash] and [appellant] were when
> you were talking to Mike Edens?
>
> [WITNESS:]  In the locker room.
>
> [THE STATE:]        Did you see them go in there or do you recall?
>
> [WITNESS:]  They went into the locker room to talk most of the time.

[THE STATE:]       Okay.  Just prior to their conversation or to their leaving to go into the locker room to talk, did you hear anything, any discussion between the two of them?

* * *

[WITNESS:]  No.

[THE STATE:]       Okay.  Had you at that time already been told by Joe Prystash what [appellant] wanted him to do in regards to [the victim]?

[WITNESS:]  Yes.

[THE STATE:]       Okay.  Do you know how long in advance of that conversation or occasion that you have been told by Prystash?

[WITNESS:]  I don't recall.  Just probably a day or two.

* * *

[THE STATE:]       Okay.  Now, after they went into the locker room, who were you with?

[WITNESS:]  I was talking to Mike.

* * *

[THE STATE:]       Now when you say, when you saw [appellant] and you say Prystash go into the locker room, describe for the Judge how you felt?

[WITNESS:]  I think I was scared.

[THE STATE:]       Okay.  Any other emotion?

[WITNESS:]  Unbelievable [sic] kind of feeling that I couldn't believe they were going to, that they were planning this murder.

[THE STATE:]       So you were scared and shocked, is that what you are telling us.

* * *

In the condition that you were in, whatever it was, is what did you then say to Edens?